Mr. Remus. May it please the court, I would like to reserve five minutes for rebuttal. The board made two critical errors of law in reversing the examiner's finding that the claims at issue are invalid for obviousness. The first error the board made is that it completely disregarded the level of skill in the art, as well as the ordinary creativity and knowledge that comes with the level of skill in the art. In failing to properly consider the level of skill in the art, the board ignored a substantial volume of evidence that provided a clear and unmistakable motivation to combine the Aquino and the Gibbs references to arrive at the claim convention. Do you make a separate point about whether it was error to insist on starting with Aquino and looking to see whether you would combine it with something else? A separate argument about where the board started in the analysis? I do think the board erred in that regard because it's really a misstatement of the examiner's rejection. The examiner did not have a lead reference per se of, I am starting with this reference and then modifying it. Instead, the examiner performed what we believe is a proper analysis in that it considered all of the prior art. Did it consider anything beyond Aquino and Gibbs? The board considered Aquino, Gibbs, and the two raw maps. There is no indication in its opinion it considered anything other than those, technically it's four references, because there are two raw maps. Our largest complaint with what the board did is that it was contrary to the proper analysis, which the examiner did, in that instead of rigidly trying to combine structures and bodily incorporate one structure into another structure, it should have considered the prior art for everything that it teaches. Review the prior art, get an understanding for what it teaches, and then reach a conclusion about what is obvious in view of those teachings. The board, by not properly considering the level of skill in the art, really compounded its mistake in two ways.  The only thing the person skilled in the art knew, according to the board, is what's in the four corners of those references. The second compounded error is that the board largely created a person with no creativity, no skill, and no common sense. The record before the board seemed to be undisputed that someone of skill in the art would know how to combine these references and, if you will, modify a Camino to have overhead storage. Your expert said someone with skill in the art would know how to make the hardware modifications to do that. And I don't read the patentee's declaration as saying the opposite. There's no statement in there that someone of skill in the art would not know how to do this. As I understand your point, I'm in complete agreement with you. That is uncontested. The ability to take the Aquino panels, move them longitudinally, and if you want to store them against the ceiling, to have that type of list system in place. The board, however, found that there was no motivation to combine those references. And where the board really erred here is by myopically focusing on just the prior art that made up the rejection, it ignored it. How can it consider more than what is before it? There was other information before it. It just chose not to consider it. But the decision of the examiner considered the four references you've talked about. How does the board go beyond that? The board has an obligation under KSR and as far back as Graham V. Deere to assess the level of skill in the art. And they can consider in deciding what the level of skill in the art is, the full volume of prior art that's out there, as well as common sense, ordinary creativity. So what you're saying is that the motivation can be found in references which weren't specifically relied on by the examiner for the obvious rejection. That is absolutely correct. And had the board done so, it would have seen a powerful motivation to combine because the way the board looked at this is that Aquino stores panels next to the wall. Gibbs teaches panels next to the ceiling. Well, why would anyone modify Aquino? Because it thinks that Gibbs is an aberration. If you look at the full scope of the prior art, there are a large number of references. I didn't understand the board to say that it thought Gibbs was an aberration but that Aquino was perfectly satisfactory, so why change what works? Because in this situation, a person of skill in the art is not going to be limited to the express structure that's built there. What would be the interest? If somebody were looking at Aquino and saying, I can move the panels, get them out of the way on the side, why would it occur to somebody to say, if there's something less than satisfactory about that, it would be better to store them up above? I can imagine one, but I'm curious what the record actually says. The record does say that, and what we cited to the board, as well as the examiner before the board, is the large volume of references that show storing bulkhead adjacent to ceiling. There's McDougall, there's Illick, there's Lee, Candlin, Learmonth, the list goes on. And so when a person of skill in the art, at the time of the invention, is looking at this problem and looking for a solution, and that is flexible storage space, they see Aquino. And Aquino says, you can have flexible storage space by having two independently movable bulkheads in the longitudinal direction. Aquino says you can store them next to the wall, but all those references I just mentioned say, you can also store them next to the ceiling. And a person skilled in the art knows that is the predominant storage position, not next to the wall, but next to the ceiling. Is there any explanation in the record for why that's the dominant one? There is no explanation. It's certainly the case that at that point in time, and it's true today, that that is the predominant storage position. And so someone skilled in the art, looking at Aquino, is going to say, well, I can go the unusual path of Aquino and store them next to the wall, or I can do what nearly everyone else is doing and store them adjacent to ceiling. The board gave absolutely no credit to the fact that that is what the rest of the industry was doing. I guess it feels to me like there are two slightly different things here. One is there are two well-known options for where to store. And as long as both are well-known, then it's obvious to choose one or the other. The other is slightly more tied to the particular quote from KSR you rely on, which talks about a market demand or market need, and then a very limited number of options. And I'm trying to figure out if that quote in particular, the market demand, market need, applies here. That would seem to me to have something to do with looking at Aquino, at the side storage, and saying, at least for some uses out there, that's less than ideal. And maybe it's because space on the side is more valuable than space up at the roof. But I looked at least to see if somebody said, space on the side is more valuable than space on the roof, and so there are reasons to try to use the less valuable space for the stowage than the more valuable, but I at least personally didn't find anything. I think you are correct. I don't think there's anything in the record that prefers one position over the other, other than the extreme majority of references show storage adjacent to the ceiling. And so this is more than just isolated teachings of bulkheads adjacent to the ceiling, but there's a whole continuum of knowledge and history here. Mr. Riemensch, if there's so much, if this is so well-known, why wasn't there a lot of public use and on-sale prior art in the record? That this company does it and that company does it, and it's already been done. All these references you cited, which again, the examiner didn't use. Maybe he didn't use them because they were all 50 or 60 years old. There were other references that were considered during the course of re-examination. The examiner told us this is not... Is there any public use? Is this route, is this really in use? Is this really something that's so well-known that it's being used predominantly, as you suggest? We believe there is a public use. In fact, we believe it was a public use by the patent owner. Is it in the record? Why is it in the record? Because it's an inter partes re-exam for which evidence of public use was not available. And so we were limited to the public documents, such as publications or prior art patents. In fact, why isn't there plenty of evidence of on-sale, the public documents, printed records of bulkhead storage units on the ceiling? The nature of this industry, the trucking industry, is that there's just not a lot of published information. There was one brochure we found. Unfortunately, these things are... The nature is you hand out brochures, the trade shows and the like, they're not always easy to find, especially going back 10 years. Further along the re-examination, we found one example from the patent owner of an offer for sale. We submitted that to the patent office, and the patent office said that it was too late in the game for new rejections. And so there was some evidence of that, but I believe public use and on-sale will be an issue if there's litigation after the fact, depending on the outcome of this appeal. I'd like to reserve the rest of my time for the book. Thank you, Mr. Remus. We're starting with Mr. McCown, is that right? McEwen. McEwen. I'd like to reserve five minutes for the solicitor. Good morning, Your Honors. I'm representing the FG Products appellee in this case. May it please the Court. In essence, the appellant is arguing that obviousness can be factually demonstrated. Well, isn't the record undisputed that someone skilled in the art was known how to modify Aquino to achieve overhead storage? There's a declaration saying that by Randall, and I don't see the patentee's affidavit or declaration as saying the opposite. Well, the declaration gets to how that might have been done, and again, this is all speculation. It says that it would have been known within the skill in the art to make this modification to change Aquino to provide for overhead storage. There's a declaration saying that, and it seems to be significant that the opposing declaration doesn't say the opposite. It doesn't say that someone skilled in the art would not have known how to make this modification. Well, I think the question is known as compared to could you do it in hindsight. I think the appellant is saying, well, if you look at Aquino, this trolley-based system, and here's all of these references. They say at the time that someone would have known how to do it. Right, but that's based upon their view of the Nelson patent and how one might work backwards from there, because what the prior art is showing that, sure, there were overhead doors, but there were not overhead doors in trolley-based systems. That's the crux of this appeal is how do you modify a trolley-based system which shows side storage and has a solution? Why do you modify it to come up with a completely different— That's a different question as to the motivation. I'm saying that the evidence seems to me undisputed that someone of skill in the art would have known how to do this, that the mechanical barriers to doing it, which the board seemed to rely on, were not barriers to someone skilled in the art. I guess I disagree with the proposition that it would have been known. I think what is being—what was entered into the record was how you would do it if you were so motivated, which we don't understand or we don't see any of that motivation. Well, is the only question then motivation? I think the question is the why, the how. Why do you— Well, no, that's confusing. Is the only question here the motivation to do it? I think the question is what is the rationale? We know from KSR that we don't need explicit motivation in any of the references. No, but answer my question. Are we dealing here solely with a question of motivation? I agree that we are dealing primarily with why you would fit these references together.  Can I ask—why don't you, in fact, state the motivation of page four of—I think it's your brief, referring to the last sentence of the summary of the patent where you say, this is actually going to minimize for and at a clearance. That is, it is a way of minimizing the space used during the stowage process. Why isn't that sufficient motivation to take, if you were starting with Aquino, to take what I understand to be a system in which the—well, I guess period. Why don't you, in fact, provide that motivation? Sure, that explanation comes from the Nelson patent, and what Aquino is describing is a side story. They had another reason for solving the problem their own way, and why you would disregard that solution and completely modify the solution that Aquino provides is nowhere in the record. Again, our patent does explain why we do it in a trolley-based system, but the Aquino reference, which also provides a trolley-based system, does it completely differently. And the other reference, the ROM reference, has a removable door, so there's any number of solutions. There's side storage. There's a removable door. You could have collapsible doors. Some trucks have plastic strips, and there's a lot of different ways to skin this cat. And the question is, how do you get to the claims of the Nelson patent and modifying that trolley-based system with the side storage absent hindsight reconstruction? There's nothing in the record, and that's what the board focused on is, well, why would you get— Your patent does—am I right? It cites the Aquino patent. It's one of the—isn't that page 19? Is that the same Aquino 1965 in the list? I believe so. So why isn't the statement at the end of the summary of your own patent a statement of something that's less than perfectly satisfactory about the earlier prior art including Aquino? And I'm not sure whether as a geometric matter it's strictly true that you use less space during stowage. I think it probably depends on whether the axis is moving at the time. But nevertheless, the patent says there's a problem out there. Too much—you have to keep too much of the cargo container available for the stowage process for the motion, and we're going to reduce that amount of space. The patent does acknowledge other solutions in the art in arriving at why we did our solution the way that we did it, but it still gets back to the question of why you would modify Aquino in the manner suggested by the appellant. Again, they've simply pointed to references, most of which are not of record, and they were cautioned about including those references in the record at the PTO, but they're trying to gap fill. They didn't meet their burden. They didn't provide, as KSR states, fitting pieces of the puzzle together. You have to outline the contour of those puzzle pieces to explain why they fit together. You can't just hammer them— Well, but that's what I was going to talk about before. I thought you agreed the only real question here was motivation. There's undisputed declarations saying someone skilled in the art would have known how to put the pieces of the puzzle together. The question seems to be would that person have been motivated to do it? Again, I agree with that statement, but there's nothing in the record as to why you would do it. The declarations were looking at it from the perspective of adopting the examiner's reasoning of this combination. How might one go about doing it at that point? So doesn't the patent itself provide a why? Well, the patent itself cannot be used to provide motivation for rejecting the claims of the patent. But if it can recognize the existence of a motivation, why can't that be evidence of a motivation? The inventors recognize that motivation. There's no evidence outside of our own document as to that motivation, and the appellant hasn't pointed to any. With that, I'll reserve the rest of the time for questions. Thank you. May it please the Court. There's only two questions on this appeal, and both of them are questions of fact. The first is whether there's a reason to combine the references, and the second is for whether for Claim 10, which we haven't talked about, whether or not the prior art teaches a structure that's the same or equivalent to the structure in the patent and whether it performs the claim function. So you agree that with respect to the claims other than 10, the only question is motivation? I do, Your Honor. I'm sorry, and that includes 11 and 12, right? 11 and 12 really go with the first class? Yes, I think that's correct. So I do agree with that, and both of these are fact findings to which the Board is entitled to deference, and this Court should affirm unless it finds that the Board's fact findings are not supported by substantial evidence. My comment on all this McDougal, Lee, Brandt, Hawkins, this other prior art, why isn't that at least relevant to and brought into the equation through the person of ordinary skill in the art what they would have known? So Randall, the third-party requester, after FG amended its claims, they put in a paper and they mentioned some of this art, and the examiner looked at that art, and the examiner made the best rejection that she thought based on that art, and that's the rejection that went forward. And Randall has a—they point to this other art, and they say, well, you know, references A, B, and C teach bracing. References D, E, F teach straps, but they don't say— What they say is that the prior art shows that the predominant, or at least a common method of storage, was overhead storage. And why isn't that in and of itself a motivation to do overhead storage? That's not what the examiner found. Well, let's take a hypothetical. Let's assume that that is what the examiner found, and that the record is undisputed that this is the predominant method of storage, but there's no further evidence explaining the details of why that's a desirable method of storage. Is the fact that it's the predominant method of storage sufficient to create a motivation? Potentially, the board may have affirmed on that basis, but that's not what we have here. I'd have to look at it. I mean, the board would have to look at it. The examiner would have to look at it. There still has to be a reason why you would do that. And Randall doesn't put forward any reason. They don't put forward that there was a design— Isn't the fact that, under my hypothetical, the fact that it's the predominant method of storage, isn't that a reason? I don't know that that's a reason, Your Honor. I mean, I haven't seen case law either way specifically on that point, on whether just the fact that it's predominant. You know, they point to these other references, but they just say that these also teach it. So there's nothing magic about any of those references. And in some ways, maybe the examiner thought that they were just cumulative. I think that that's a rejection that she thought she had. If we disagree with you as to the result in this case, what is the proper thing for this court to do? This court would send it back to the Patent Office and reverse—remand, I guess, the board's decision. We wouldn't—would there be a way that we would render it obvious on the spot? I think this court has typically not done that. They've just reversed it back with your reasoning. Because we'd have to find facts otherwise, wouldn't we? Right. So you would just give your reasoning as to why you thought the board's rejection was an error and send it back to the Patent Office, and we would act accordingly. So there's no further questions. All right. Thank you, Ms. Lynch. Just one point in response to Judge Rader's final question. I do believe this court has the authority to reverse the board and reinstate the examiner's decision. The examiner has already made the proper factual findings in this case. We're not reviewing the examiner, are we? We're reviewing the board. Right. So we have the board's decision. In order to reach your result, we'd have to make a finding as to the level of skill in the art. We'd have to make a finding as to the motivation. Those are factual, aren't they? That is an alternative, but this court did not reverse. Well, does an appellate court make findings, or does it review decisions? It absolutely reviews decisions. So if we find an error in the decision, we send it back, right? Yes. We don't make our own decision. Correct. Thank you. If there are no further questions, we'll rise. All right. Thank you, Mr. Ramos. Our next case is Videri v. Ramos.